Good morning, Your Honors. I would like to reserve two minutes of my time, if I may, for rebuttal. I'd like to get right to the heart of the matter here, if I may. This is a case where we believe calls for an analysis and a logical extension of Burlington Northern v. White in the context of whether or not the challenged conduct that Ms. Novak-Scott has alleged here would reasonably dissuade a reasonable employee from engaging in the protected activity. And in summary, we've laid out a number of issues in our brief, but we think there are genuine issues of material fact here for the jury to determine whether or not a series of events that took place over a period of time when viewed in context with one another would give rise to a claim of actionable retaliation. But isn't, I mean, the question comes down to whether there was an adverse employment action that was retaliatory, right? Well, yes and no, Your Honor, if I may. I think what White instructs is that if it is a material, materially adverse in the sense that it would dissuade someone from coming forward. I understand that, but I mean, we've got to start with what happened. Correct. I mean, start with what she says caused her harm. And the harm that she says she was caused is that there were several, there were typos on the complaint that required it to be done several times, that some coworkers sort of were gossiping about her, and that the questioning of DeLuca was leading, and that she had to answer a question about herself and her own conduct. And I have a very hard time understanding how that adds up to the kind of adversity that would chill someone from complaining. Well, if I may, Your Honor, I think the position that Ms. Novak Scott has taken in this matter is that there were, there was a continuum of events that took place here, and Your Honor's highlighted some of them. But if, as White instructs, context matters, then we need to place those in context with the continuum of events. What happened, if you will recall, Ms. Novak Scott first went to her union president and brought to her attention the issues regarding Mr. DeLuca. The president then went to the city and said, what do we do about this? And the city said, well, it's a union problem, even though Mr. DeLuca was a city employee. That started in process a series of events that we believe, when we look at the entire context of this, went from three attempts to get the charge right, little or no activity in the interviewing process and the investigatory process, until Ms. Novak Scott filed a charge with the EEOC. And then what happened, the investigation, we believe, went from one of investigating Mr. DeLuca to then investigating Ms. Novak Scott. She went from being, we believe, the facts would show, she went from being the accused, the accuser to being the accused. And what happened then after that is the very person who was conducting the investigation and supposedly conducting the neutral investigation then wrote a report that, despite admissions from Mr. DeLuca that he had engaged in conduct clearly in violation of the city's policy, found that there was no sexual harassment, and then filed the position statement with the EEOC to that effect. We know that in this circuit, cause determinations are admissible in trial, and that did not result, there was no cause determination found. And we believe that that certainly could have been a factor. But there is a plethora of events that went on after that. The confident breaches of confidentiality, Ms. Novak Scott testified that during union negotiations, her charge came up and was discussed openly, that all of those things culminated in her saying, look, I've lost faith in the city EOD department. I'll never go there again, and I won't direct anyone else to go there again. Now, that's problematic because of the affirmative defenses that can be raised under Ellerth and Farragher. If you don't have confidence in an internal investigative process, then you don't avail yourself of that process. You're setting yourself up for an affirmative defense. So we believe that in totality, all of these things together, taken in context, have resulted in a situation where anyone who was subjected to the type of conduct that Ms. Novak Scott was would think long and hard before they go to the internal process and file a complaint. We don't believe that that's consistent with what White instructs. We believe that that sets up a scenario for an affirmative defense to be successful, and we don't think that that's appropriate under the circumstances of these cases. Are there cases where the investigation itself has been deemed to have been, constitute retaliatory conduct on the part of an employer?  The Devin v. Schwann's Home Service Inc. case out of the Eighth Circuit, where it was found that an employer's failure to properly address discrimination complaints can constitute a retaliatory action sufficient to meet the White standard. I'm not aware of any decisions in this circuit that holds that way, nor am I aware of any decisions of any district courts in the circuit that specifically hold that way. But if you think for a moment about what White was attempting to address and what the Supreme Court was talking about in White, the real issue here is did they dissuade or would they dissuade someone from coming forward? And the situs of the conduct is really irrelevant. It can be outside the workplace or in the workplace. Precisely. It doesn't have to be adverse employment action. Precisely. For that retaliation claim, right? Precisely. There is some unique fact in this case, given the nature of where this conduct occurred. It took place at the union hall when both Ms. Novak-Scott and Mr. DeLuca were on full release. But it doesn't change, as Your Honor notes, what White addresses, and that is they both were on city time. They were both city employees. They were both under the jurisdiction of the city. The union had no ability to address this matter other than sending Mr. DeLuca back into the workforce. And there is evidence in the record that there was concern about doing that because he would go back into the work environment around other women where this same type of conduct, which he admitted he had engaged in, could then be repeated itself without the city taking proper steps. So. Kennedy. Answer this question for me, because this is my problem with your case. I think your case, as you argued and it's in your brief, you depend on sort of this totality of the circumstances approach. Maybe any one thing was not all that harsh, but you take this entire series of events and that would amount to retaliatory action. The problem I have with that approach is there are several instances that you depend upon that, to me, I don't think can be classified as retaliatory from an objective point of view. And if I remove those items, then the picture you have is not nearly as bad as you paint. For instance, in my view, I don't think, you know, for instance, there's certain questions that were asked in the questionnaire that were sent to her, right, which she didn't answer. The merely sending of the questionnaire, she says, is retaliatory conduct or part of the, you know, chain of events that amounts to. I think objectively speaking, for instance, you know, if you're examining a witness and you ask, you know, a witness that kind of question of cross-examination, it's obviously relevant. I don't think, you know, if the question is relevant to the investigation, then I don't think, you know, we can go behind that and say, well, what was the subjective motive in asking that? I think, you know, otherwise, you completely destroy the process of the investigation, don't you? Well, if we parse anything, Your Honor, I think we can examine things and certainly come to the conclusion that Your Honor has. But I think the old adage, sometimes the sum of the parts is greater than the whole is greater. No, but what I'm saying is when you say sum of the parts, I think you clearly have parts that, as far as, you know, I can see, you aren't entitled to depend upon. So if we take away those parts, then the sum becomes a much smaller sum. Well, we respectfully believe that that's a factual question for the jury to decide on the totality of the facts rather than as a matter of law. And I'm running out of time, so if I could reserve my remainder of my time for rebuttal, I'd like to do that. Thank you. Certainly, Mr. Good. Good morning, Your Honors, and may it please the Court. I think it's telling a comment from counsel right at the beginning of his argument. He admitted to the Court that he's looking to extend the Burlington White decision, and that's really what it's being looked at. We're ignoring any case law based on any facts similar to this case, any records similar to this case. We're trying to now extend the application of Burlington White to a set of facts and a record that has never been extended to previously. Your Honor picked up early on about the fact that the issues which are alleged to be material harm, as Burlington tells us, that requires a material adverse action distinguishing between what would be referred to as significant harms and trivial harms. The district court acknowledged a whole list of things that were pointed out early on in our summary judgment motion. The plaintiff was not terminated here. She did not receive a negative employment reference. There was no negative performance review. She was never denied a promotion. She was never given a more burdensome work schedule. She was never denied secretarial support, excluded from meetings, any change in her benefits. The court or the city, when it performed its investigation of the case. No, but the test is not, you know, like an ordinarily Title VII case, but the test is whether, you know, it would dissuade a reasonable person from filing a complaint. That's correct, Your Honor. And you don't have to have, you know, termination of benefits or anything like that in order to amount to, you know, a set of circumstances that would dissuade a reasonable person. No, I would agree that the context definitely matters, and the context here is appropriate as to the scope of the investigation, how the city performed its investigation, what it looked at, why it sent a questionnaire, for instance, to the plaintiff asking about things that were brought up in rebuttal. Going to your very point, the district court acknowledged, again quoting from Burlington in regards to here, we're dealing with the second prong of the prima facie case, the Supreme Court has recognized that Title VII does not set forth a general civility code. So, yes, there can be an adverse employment action maybe outside the employment context, because the court goes on to recognize, rather than protecting individuals from all retaliatory actions, Title VII protects individuals only from those retaliatory actions that produce significant harm. That really is the key. So we're looking at what adverse actions occurred, and then beyond that, were those significant, as the court in Burlington characterized as significant harms, or did those fall in the category of minor or trivial harms? So you're concluding that no reasonable jury could look at these facts and reach the conclusion that a reasonable person could have been dissuaded from bringing claims merely because of the aggregate of foot faults to at a minimum. That the City of Phoenix engaged in with their timing of the investigation, the lack of confidentiality, and perhaps the overly personal nature of the questionnaire that was sent to her. Yes, that's exactly what we're contending. No reasonable jury. Correct. And, in fact, you look at her herself as an indicator of what a reasonable person would do. What did this particular plaintiff do? She was not dissuaded in any manner. She filed an EEOC charge before the EOD, the city's department, concluded its internal investigation. He's entitled to do that. He did. But we're just saying she filed both an initial EEOC claim and a secondary EEOC claim. There was no dissuasion. Part of your case, which I think the district court accepted, is that some of these actions were, I'll call them negligent, you know, like the error in certain things, you know, clerical errors, you call them, but not as, I mean, not intentional. So is it the law that, in other words, merely negligent conduct is not sufficient to give rise to a retaliation claim, even though there's a whole series of negligent acts? It goes back to is it a significant, material, adverse action. And the scope of those specific things, as you look at them individually, and counsel wants to talk about them collectively, that's fine. You still have to go through individually what is the nature of each individual event. We're looking at the length, for instance, of the investigation. Well, the city has its own internal policy saying it needs to be concluded within 180 days. Here it was concluded within 180 days, and yet the plaintiff, based on no other evidence apart from her own belief, says, well, that took too long, and it was retaliatory. Kennedy, No, I'm talking about, you know, the kinds of things, for instance, like, you know, some papers were sent to the wrong department, right? They're addressed to the wrong individual. The envelope wasn't stamped confidential, that kind of stuff, which, you know, is easily attributed to clerical errors. But if you get enough of those, is it sufficient to, you know, give rise to a chain of circumstances that amount to a retaliatory action? That certainly could happen if you have a set of facts and a record that justifies those things and shows harm based upon those individual actions. I would simply refer you to footnote 3 and 4 of the district court's order, where he looks, the judge examines closely some of those events and talks about is there harm in some of these actions, or was there not? Does it still rise to that level? And, yes, I would agree. There are certain things that could be negligible or negligent in a fashion. There's no intent for harm that could rise to that level. But based on the record we have here and the facts that were before us, that would not apply in my contention, Your Honor. Another point would be the subject matter of the questionnaire. There are several witnesses who are interviewed, at least nine, who are interviewed by the city. The accused party ultimately says, look, this is my side of the case. There are several things that were going on. It says, for instance, this plaintiff here engaged in the dialogue with me, was welcoming the behavior, engaged in some of the same behavior. The city certainly had a right to then ask the plaintiff about those allegations. The plaintiff wants us to accept the fact that there was some corroboration for an alleged harassing incident, and therefore say you must now rule as a matter of law that sexual harassment occurred. The city conducted its investigation, found that, yes, there was some improper conduct, but it did not rise to the level of severe and pervasive patterned both the city policy after Title VII. Therefore, although there was some improper conduct, the accused party was ultimately penalized, punished to some extent. He was suspended for three days without pay. It did not rise to that level. And there was evidence for that on the record. That in and of itself cannot be a retaliatory action on behalf of the city just because they ask questions that come about in the scope of an investigation. I would also point, Your Honors, to the fact, as was raised in our briefs just briefly, the district court judge here decided this matter solely on the fact that the prima facie case was not satisfied. The judge felt that the second element was not shown. There was no evidence of an adverse employment action as it's required to be material under the facts, and so the judge therefore finished his conclusion. He pointed on to say, I still recognize the fact that the city argued as an alternative basis, that even if the prima facie case had been satisfied, we then have to look at once the city raises its legitimate reasons for its actions, was there evidence that this is pretext? This was given this whole issue of pretext was given very short examination in the papers by the plaintiff. Yes, it's one thing to argue all of our time on is there a material adverse action, and that's important. Hopefully we prevail on that as we did with the district court. But that's not dispositive. Even if the court finds there was evidence of an adverse action, we still then have to focus on are the reasons then set forth by the plaintiff, are they legitimate or are they pretext? And as the judge pointed out, there's been no evidence that the city's reasons are pretext. So there really are two grounds to affirm the summary court judgment order of the district court, either on the fact that the prima facie case was not satisfied or on pretext. I mean, can't the fact that, for example, there is an arguable conflict of interest in connection with the investigation give rise to some degree of credence to the notion that this constellation of mistakes really demonstrates that it's pretextual and that what they were really trying to do, motivated to do, was to keep this person in line and not to reward her for making a complaint against a fellow employee or supervisor? There are hypothetical situations where that could be true, and I'm sure there are sets of facts where that could be the case. But based on the record before you and the set of facts we have here, I would submit that no, it cannot form the basis alone to establish a pretext argument. With that, unless there are further questions, I'll rest my time. Thank you, Mr. Judge. Mr. Bonnet. Thank you. I'll have to talk very quickly. In response to the pretext question, we direct the Court to the Rodd case, which we cite on page 10 of our reply brief, that the evidence that can establish a prima facie case can also be adequate to overcome the concept of the issue of pretext. Finally, I'd just like to sum up, trust is everything. When we lose trust, we lose our faith in the process. And when we lose our faith in the process, then people stop using the process. And that's the contention here that Ms. Novak-Scott raised, is that she lost faith in this process. She's told people that she won't go there, people won't go there, that that's the type of dissuasion that the Court was concerned about in White, and we think that's what's present here. Thank you. Okay. Thank you, counsel. The matter just argued will be submitted.
judges: Leighton, Rymer, Tashima